Ellis E. JENSEN, Plaintiff-Respondent,

v.

JANESVILLE SAND & GRAVEL COMPANY,
Defendant-Appellant.†

Court of Appeals

*No. 85-0352. Argued October 10, 1986.—Decided September 17, 1987.*

(Also reported in 415 N.W.2d 559.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendant-appellant there were briefs by *Robert J. Ruth* and *Bolgrien, Ruth & Rentz, S.C.,* of Beloit, and oral argument by *Robert J. Ruth.*

For the plaintiff-respondent there was a brief by *Thomas J. Basting* and *Michael E. Grubb* and *Brennan, Steil, Ryan, Basting and MacDougall, S.C.,* of Janesville, and oral argument by *Michael E. Grubb.*

Before Gartzke, P.J., Dykman and LaRocque, JJ.

GARTZKE, P.J.  Janesville Sand and Gravel Company appeals a judgment on a verdict awarding Ellis Jensen $131,848 damages for the company's breach of its contract to pay Jensen's retirement salary. The issues are whether because a statute of limitations or laches bars Jensen's action, the trial

court should have granted the company's motion for summary judgment; whether the trial court erred by instructing the jury that ambiguities in the contract must be resolved in favor of the employee, and whether the court abused its discretion by denying the company's motion to modify the award. We conclude that the action was timely brought, the instructions were erroneous but the error did not affect the company's substantial rights, and the award is excessive. We direct entry of judgment for a lesser amount.

## SUMMARY JUDGMENT

The company argues that because Jensen's claims were barred by the statute of limitations or by laches, the trial court should have granted the company's motion for summary judgment. When reviewing a summary judgment, we follow the same methodology as the trial court. That methodology has been described many times. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983), is one of many cases reciting the analysis. We need not repeat it. Our review is *de novo.*

Jensen's complaint alleges that the company employed him from 1945 to 1970. In 1970 the company agreed that upon Jensen's retirement, it would pay him a lifetime annual pension of $17,640. He retired and the company paid the pension through 1974, except that it paid $8,820 for the year 1975. In that year the company underwent a financial crisis, and Jensen agreed to accept one-half of his pension in 1975 and for the duration of the crisis to forego his pension. By January 31, 1979 the company's operations were again profitable, and Jensen demanded resumption of his pension payments. The company refused to pay.

He seeks $88,200 in damages, computed at $17,640 per year for 1979 through 1983, and an order requiring the company to pay him $17,640 per year for the rest of his life.

■ The complaint states a claim for breach of contract. A pension plan provided by an employer is part of a contract of employment and an action may be brought for its breach. *Estate of Schroeder,* 53 Wis. 2d 59, 65, 191 N.W.2d 860, 863 (1971); *Voigt v. South Side Laundry & Dry Cleaners,* 24 Wis. 2d 114, 116, 128 N.W.2d 411, 412 (1964).

In its answer, the company denies every factual allegation of the complaint except those identifying the parties. As affirmative defenses, the company pleads laches and the six-year statute of limitations on a contract, sec. 893.43, Stats., Jensen having commenced his action July 22, 1983. The company alleges that Jensen's benefits were terminated on October 30, 1975 and that the supplemental agreement upon which his action is based is not in writing and signed by Jensen as sec. 241.02, Stats., requires. Although we note the inconsistency between the general denial, on the one hand, and the balance of the allegations, on the other, that denial raises issues of material fact.

We turn to the company's affidavit supporting its motion for summary judgment. The question is whether the affidavit has established a prima facie case which defeats Jensen's claim. *Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 583. We conclude that a prima facie defense was not established.

The supporting affidavit is based on Jensen's deposition. Jensen testified that he received a $17,640 annual pension in 1971 through 1974, $8,820 in 1975, and nothing since then. He was told in early 1976 that

his pension had been terminated, there was no intention to restore the pension, he was completely removed from the pension plan, and the board had refused to restore his payments.

Because the right to receive periodic payments under a pension is a continuing right, the statute of limitations runs from the time when an installment is due under the pension. *Compare Gall v. Gall,* 126 Wis. 390, 395–96, 105 N.W. 953, 955 (1905) (contract to make annual support payments is breached for each year of nonpayment). "[I]f the promisor has a continuing duty to perform, generally a new claim accrues for each separate breach. The injured party may assert a claim for damages from the date of the first breach within the period of limitation." *Segall v. Hurwitz,* 114 Wis. 2d 471, 491, 339 N.W.2d 333, 343 (Ct. App. 1983) (citations omitted).

Jensen's testimony on deposition establishes that in early 1976 the company repudiated its contract to pay him a pension. We said in *Segall,*

> A continuing contract is capable not only of a series of partial breaches but also of a single total breach by repudiation or a material failure of performance. If a single total breach occurs, the right to bring an action accrues at that time and the statute of limitations begins to run.

114 Wis. 2d at 491–92, 339 N.W.2d at 343 (citations omitted).

Jensen brought this action in 1983. If the company's 1976 repudiation of its pension obligation to Jensen resulted in a total breach of its contract, and a single cause of action accrued at that time, then the

six-year statute of limitations in sec. 893.43, Stats., bars this action. That statute of limitations applies to actions to recover pension benefits. *Estate of Schroeder,* 53 Wis. 2d at 67, 191 N.W.2d at 864. We conclude that the action is not barred.

*Segall* involved the continuing obligations of defendants under their agreement not to compete and not to use a business name. On the facts before us, the company's only duty of performance was to pay money in installments not related to one another.

In such a situation repudiation does not give rise to a claim for damages for total breach.

> Where at the time of the breach the only remaining duties of performance are those of the party in breach and are for the payment of money in installments not related to one another, his breach by non-performance as to less than the whole, whether or not accompanied or followed by a repudiation, does not give rise to a claim for damages for total breach.

*Restatement (Second) of Contracts* sec. 243(3) (1981). The *Restatement* illustrates sec. 243(3) as follows:

> A, an insurer, issues a policy of disability insurance to B under which monthly payments are to be made to B and the payment of additional premiums waived if B is totally and permanently disabled. B suffers total and permanent disability. A makes monthly payments for a year and then unjustifiably fails to make further payments. After A has been in default for a year, B sues A. B has a claim against A merely for damages for partial breach for non-payment during the second year. The result is the same even if A repudiates by telling B that he will not make the payments.

Section 243 comment d, illustration 5.

Application of the same rule to pensions will avoid pension funding problems which might otherwise arise from accelerating payments. It will also avoid uncertainties in determining the present value of future payments payable for life. We apply the rule to the case before us.

We hold that the company's repudiation of its obligation to pay Jensen an annual pension did not result in a total breach requiring him to commence this action within six years from the date of repudiation. The period covered by the complaint begins with 1979, less than six years from commencement of this action. We conclude that the company's action for summary judgment fails to establish a prima facie defense based on the statute of limitations.

We next examine the question whether the company's supporting affidavit establishes the defense of laches. We conclude that it does not. For laches to bar a claim, an unreasonable delay must occur, the plaintiff must know the facts and take no action, the defendant must not know the plaintiff would assert the right on which the suit is based, and prejudice to the defendant must occur. *Kaiser v. City of Mauston,* 99 Wis. 2d 345, 358–59, 299 N.W.2d 259, 267 (Ct. App. 1980). Nothing in the company's affidavit establishes that it was prejudiced by Jensen's delay in bringing this action. Since one element of laches has not been established, the doctrine is inapplicable.

Having concluded that the company's affidavit fails to establish a prima facie defense, we must affirm the trial court's order denying the motion for summa-

ry judgment. *Cherokee Park Plat,* 113 Wis. 2d at 116, 334 N.W.2d at 583. For that reason, we need not examine Jensen's opposing affidavit.

## JURY INSTRUCTIONS

After the verdict, the company argued that the case should not have gone to the jury on grounds that the contract unambiguously allows the board of directors to terminate the pension plan at any time. The company therefore moved to dismiss the complaint. The plan calls for payments to a retired employee "for such period as the Board of Directors of this corporation may, from time to time, deem reasonable in view of all circumstances." We conclude that the trial court properly denied the motion.

A contract provision is ambiguous if a reasonable person could understand it differently. *Jones v. Jenkins,* 88 Wis. 2d 712, 722, 277 N.W.2d 815, 819 (1979). Whether a reasonable person may differently understand a provision is a question of law, which we decide independently of the trial court's decision. *Moran v. Shern,* 60 Wis. 2d 39, 47, 208 N.W.2d 348, 351 (1973).

We agree, however, with the trial court that the disputed language can reasonably be read two ways. It can be understood to mean that the board of directors possesses absolute discretion to determine the amount and duration of the benefits to be paid. On the other hand, a reasonable person can read the language to mean that while the board possesses discretion to decide when and how much retirement income should be paid, it may do so only taking into account

530

unexplained circumstances. The agreement is ambiguous.

The trial court instructed the jury that "because the plan was authored by Janesville Sand & Gravel Company and is its unilateral work product, any ambiguities in the plan ... must be resolved in favor of the employee and against the company." At the instruction conference, as on appeal, the company's counsel argued that the agreement was not truly "unilateral" because Jensen was a substantial shareholder in the company and was the president at the time the plan was prepared.

The trial courts have considerable discretion when drawing instructions, *Carlson v. Drews of Hales Corners, Inc.*, 48 Wis. 2d 408, 414, 180 N.W.2d 546, 549 (1970), but every exercise of discretion must be based on the facts before the court. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). Accordingly, a trial court "should instruct the jury with due regard to the facts of the case." *Lutz v. Shelby Mut. Ins. Co.*, 70 Wis. 2d 743, 750, 235 N.W.2d 426, 431 (1975).

The trial court abused its discretion by giving the instruction. The pension plan can hardly be said to be the unilateral work product of the corporation when Jensen insisted the plan include the provision in dispute.

Whether the instruction affected the substantial rights of the company is another matter. We are not to reverse a judgment or order a new trial unless after an examination of the entire action or proceeding it appears that the error complained of has affected the substantial rights of the parties seeking to reverse or

set aside the judgment or to secure a new trial. Sec. 805.18(2), Stats. The company argues that because of the erroneous instruction, it was precluded from arguing to the jury that Jensen should be bound by the terms of a plan "that he authored." It contends that the unfair influence of the instruction is apparent because the jury found that the company breached an obligation to pay benefits which Jensen himself conceded could be terminable.

The company's view of the evidence is strained. Jensen explained the reason for the provision: to avoid the company's having to show pension obligations as a liability on its balance sheet. The company's attorney testified that he had drawn the plan at the instructions of the board of directors. Nothing in the attorney's testimony suggests that Jensen "authored" the plan.

Because we conclude that the company's substantial rights were not prejudiced by the erroneous instruction, we will not reverse or order a new trial on the basis of the error. Sec. 805.18(2), Stats.

## DAMAGE AWARD

The trial court reasoned that the jury probably found that the company had breached its pension contract for nine years. On that basis, the jury could have awarded Jensen $17,640 per year for nine years, or $158,760, and could have added interest to each annual payment the company had failed to make. The trial court therefore refused to set aside the $131,848 award.

On appeal, we review the trial court's decision for abuse of discretion. If, as here, the trial court's

analysis of the evidence upon which it approves the award is reasonably complete, we need not review the entire record as a matter of first impression. Rather, we review the evidence only to the extent necessary to determine whether the court abused its discretion. *Koele v. Radue,* 81 Wis. 2d 583, 587, 260 N.W.2d 766, 767–68 (1978). To sustain an exercise of discretion, we must find that the court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy,* 107 Wis. 2d at 414–15, 320 N.W.2d at 184.

The difficulty with the trial court's analysis is that it is based on an error of law. The company pleaded the six-year statute of limitations as a defense to this action. Consequently Jensen cannot recover for annual payments extending beyond six years before the date he commenced this action, and the trial court abused its discretion when it assumed otherwise.

Notwithstanding the shorter period Jensen relied on in his complaint, the company computes the maximum damages awardable to him beginning six years before he commenced this action and ending with the date of trial, or from July 22, 1977 to December 6, 1984. The company computes the maximum at $126,727.22, including pro rated benefits for the partial years of 1977 and 1984. Because Jensen does not contest the company's arithmetic, we accept it. Jensen offers no computations to show that interest on the installments makes up the $5,121.22 excess.

We therefore reverse and direct the trial court to enter judgment against the company in the amount of $126,727.22.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment in favor of plaintiff for $126,727.22.