David ZASTROW, the Employee Stockholders of Perry Printing, Larry J. Gocker, Neal C. Kopplin, Catherine Thompson and Eunice Weihert, Plaintiffs-Appellants-Cross-Respondents-Petitioners,†

v.

JOURNAL COMMUNICATIONS, INC., Journal Employees Stock Trust (JESTA) and Trustees of Journal Employees Stock, Defendants-Respondents-Cross-Appellants,

PERRY PRINTING DIVISION n/k/a Northstar Printgroup, Inc., Paul M. Bonaiuto, Keith M. Spore, Executive Risk Indemnity, Inc., Robert A. Kahlor, Steven J. Smith, Thomas M. Karavakis, Peter P. Jarzembinski and Douglas G. Kiel, Defendants-Respondents.

Supreme Court

*No. 2004AP276. Oral argument February 23, 2006.*
*—Decided June 20, 2006.*

2006 WI 72

(Also reported in 718 N.W.2d 51.)

† Motion for reconsideration filed 7-6-06, denied 10-3-06.

For the plaintiffs-appellants-cross-respondents-petitioners there were briefs by *Kevin Demet, Donal Demet,* and *Demet & Demet SC,* Milwaukee, and oral argument by *Kevin Demet.*

For the defendants-respondents-cross-appellants there was a brief by *Thomas L. Shriner, Jr., David W. Simon,* and *Foley & Lardner LLP,* Milwaukee, and oral argument by *Thomas L. Shriner, Jr.*

An amicus curiae brief was filed by *Jennifer L. Peterson* and *LaFollette Godfrey & Kahn,* Madison, on behalf of Wisconsin Manufacturers and Commerce.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. In this review of a court of appeals decision that reversed

and remanded to the circuit court[1] to dismiss plaintiffs' claims for breach of fiduciary duty based on a statute of limitations defense, we are asked to determine whether a claim for breach of fiduciary duty of loyalty must be intentional, or whether it can also be based on negligence. We conclude that the circuit court found that the Trustees of Journal Employees Stock (Trustees) created circumstances that adversely affected the plaintiffs' interests by giving plaintiffs incomplete information relative to plaintiffs' holdings, which we conclude is a breach of the fiduciary duty of loyalty, an intentional tort. As a result, the two-year statute of limitations found in Wis. Stat. § 893.57 (2003–04),[2] which is applicable to intentional torts, requires dismissal of the lawsuit. Accordingly, we affirm the decision of the court of appeals.

## I. BACKGROUND

¶ 2. Plaintiffs are former employees of Perry Printing (Perry), which was a wholly owned subsidiary of Journal Communications, Inc. (Journal Communications). Since 1937, 90 percent of Journal Communications' stock has been held in the Journal Employees Stock Trust (Trust). Administration of that Trust is governed by the Journal Employees' Stock Trust Agreement (JESTA) and managed by the Trustees of the Trust.

¶ 3. As a part of their employee benefits, employees of Perry could, under certain circumstances, purchase units of the Trust (Trust-units) at a price that

---

[1] The Honorable John M. Ullsvik, Circuit Court Judge for Jefferson County, presided prior to the appeal.

[2] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

was formulaically determined. The JESTA required employees who owned Trust-units and whose employment terminated for any reason other than retirement to immediately offer for sale to persons who were eligible purchasers under the JESTA all Trust-units at the then-current formula price. The JESTA also provided that when an employee retired, the employee was permitted to offer his or her Trust-units for sale over a period of ten years, with not less than ten percent of the Trust-units offered for sale in each year. Having an extended sell-back opportunity is claimed to be beneficial because the Trust-units have always appreciated in value.

¶ 4. In 1995 as part of its corporate restructuring, Journal Communications sold Perry's assets. The sale agreement required the buyer to continue to operate the business and to offer similar positions with comparable compensation and benefits to all Perry employees. When the sale closed, all employees were terminated by Perry and rehired by the buyer of Perry's assets.

¶ 5. Because their employment with a Journal Communications company terminated when Perry was sold, under the JESTA, the former employees had to offer to sell back their Trust-units immediately, unless they retired. In that case, the JESTA accorded them ten years to accomplish the sell-back. None of the employees actually retired, and the Trustees did not treat any of the Perry employees as retirees, even though some who accepted new employment with the buyer were eligible to retire. Instead, the Trustees told the former employees of Perry they had one to five years, depending on how long each person had owned the Trust-units, during which they had to re-sell them.

¶ 6. In April of 2000, former Perry employees who had been employed on the date of the Perry asset sale

and who had sold their Trust-units at the time of the corporate restructuring, filed a class action against Journal Communications, the Trust, and its Trustees (collectively, the defendants). The complaint alleged that the plaintiffs were entitled under the JESTA to be treated as retirees with the right to sell their Trust-units over a ten-year period, but that the Trustees denied them this right. Plaintiffs' claims included breach of fiduciary duty, breach of contractual rights and denial of a statutory right to wages under ch. 109.

¶ 7. The defendants moved for partial summary judgment, asking the circuit court to reject these theories because many plaintiffs were not eligible to retire and of those who were eligible, none had retired. Eventually, after reaching a decision on that initial motion and several other motions that followed, the circuit court granted the defendants' request to dismiss the complaint and amended complaint, in part.[3] It denied all claims relative to those former employees who were not eligible to retire when Perry's assets were sold, and it dismissed all other claims for relief, except those for breach of fiduciary duty.

¶ 8. As part of the defendants' motions, they asserted that the two-year statute of limitations for intentional torts, Wis. Stat. § 893.57, barred the plaintiffs' breach of fiduciary duty claim. The circuit court did not agree. Instead, it concluded that not all breaches of fiduciary duty are intentional torts, reasoning that there is a distinction between claims based on negligent conduct and claims that are based on intentional conduct or conduct that evinces a reckless disregard of

_____

[3] The procedural narrative recited herein is a summary of the actions in circuit court. It is not meant to repeat each procedural step that eventually led to the trial of only the claim of breach of fiduciary duty.

another's rights. For breaches of duty based on negligent conduct, the circuit court reasoned that the six-year statute of limitations in either Wis. Stat. §§ 893.52 or 893.53 applied. The circuit court determined that the applicable moment at which to toll the statute of limitations was the date of each plaintiff's sale of his or her last Trust-unit, and that any time-bar would depend upon that date for each individual plaintiff.

¶ 9. The breach of fiduciary duty claims of the plaintiffs who were eligible to retire when Perry's assets were sold were tried to the court. Subsequent to the trial, the court made the following findings and conclusions: (1) none of the plaintiffs had intended to retire; (2) the Trustees told the plaintiffs they had to sell back their Trust-units over a one to five year period after leaving their employment with Perry; (3) the defendants had a fiduciary obligation to tell the plaintiffs that they could retire from Perry before the sale closed, which would have made them eligible for a ten-year sell-back period; (4) retirement would mean those who made that choice would not be entitled to automatic employment by the buyer, but would have to apply for such employment; (5) three of the plaintiffs would have retired, if the Trustees had told them they could do so; (6) the same three plaintiffs did not know about the ten-year sell-back opportunity; (7) the Trustees had a conflict of interest with respect to advising the plaintiffs about a choice of either retirement or immediate employment with the buyer because the Trustees, as employees of Journal Communications, had the right to purchase some of the Trust-units sold by the plaintiffs; (8) the Trustees negligently failed to fulfill their duty to advise plaintiffs; and (9) the six-year statute of limitations applies.[4]

---

[4] The court awarded damages to the three employees who it determined did not know about the ten-year sell-back opportu-

¶ 10. The defendants appealed, challenging the circuit court's application of a six-year statute of limitations and raising Clause 33 of the JESTA[5] as a bar to all negligence claims. The defendants asserted that the conduct found by the circuit court as proof of plaintiffs' claims was a violation of the Trustees' duty of loyalty to the plaintiffs. As such, it is an intentional tort and barred by the two-year statute of limitations.

¶ 11. The court of appeals reasoned that *Beloit Liquidating Trust v. Grade*, 2004 WI 39, 270 Wis. 2d 356, 677 N.W.2d 298, which we decided after the circuit court's decision, controlled because *Beloit Liquidating* concluded that the two-year statute of limitations for intentional torts applies to breach of fiduciary duty claims. *Zastrow v. Journal Communications, Inc.*, 2005 WI App 178, ¶ 2, 286 Wis. 2d 416, 703 N.W.2d 673. The plaintiffs on appeal did not dispute that if the two-year statute of limitations applies, their claims were not timely brought. *Id.* Accordingly, the court of appeals reversed the circuit court and remanded with directions to dismiss the complaint. *Id.*

## II. DISCUSSION

### A. Standard of Review

¶ 12. Our review requires us to choose and apply the appropriate Wisconsin statute to the plaintiffs' claims to determine if they are time-barred. Choosing

---

nity for retirees and would have retired and then applied for employment with the new company if they had known. By stipulation, damages were awarded to a fourth employee. The circuit court also awarded attorney's fees.

[5] The JESTA has a liability limitation clause, Clause 33, which precludes negligence claims against the Trustees.

the correct statute of limitations involves a question of law that we independently review. *Estate of Hegarty v. Beauchaine,* 2001 WI App 300, ¶ 14, 249 Wis. 2d 142, 638 N.W.2d 355. Whether one breached a fiduciary duty is also a question of law that we review independently. *Jorgensen v. Water Works, Inc.,* 2001 WI App 135, ¶ 8, 246 Wis. 2d 614, 630 N.W.2d 230.

B. Wisconsin Stat. §§ 893.57 and 893.43

¶ 13. A question in our review of the court of appeals decision is which statute of limitations applies to the plaintiffs' claims: the two-year statute of limitations in Wis. Stat. § 893.57, or the six-year limit found in either Wis. Stat. §§ 893.43 or 893.52. This question is answered by the answers to two broader questions: (1) whether a breach of the fiduciary duty of loyalty is always an intentional tort and (2) whether the circuit court found that the Trustees breached their fiduciary duty of loyalty.

¶ 14. Wisconsin Stat. § 893.57, the statute of limitations for intentional torts, states:

> An action to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within 2 years after the cause of action accrues or be barred.

The parties do not dispute the overall meaning of the statute, but rather, they ask us to answer the question of whether the plaintiffs' claims, which the circuit court found the plaintiffs proved, are time-barred because they are intentional torts.

¶ 15. The plaintiffs contend that the defendants negligently breached their fiduciary duty. Based on that theory, plaintiffs claim that the six-year statute of

limitations of Wis. Stat. §§ 893.52 or 893.53 applies to their claims.[6] Section 893.52 states:

> An action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues or be barred, except in the case where a different period is expressly prescribed.

Section 893.53 states:

> An action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 6 years after the cause of action accrues, except where a different period is expressly prescribed, or be barred.

¶ 16. The plaintiffs assert that the Trustees committed two types of breaches of fiduciary duty: an intentional breach and a negligent breach. They argue that the court of appeals made an artificial distinction between negligence and the negligent breach of a fiduciary duty. In sum, their argument implies that where a trustee has a fiduciary duty, all potential errors of judgment are breaches of a fiduciary duty, although some can be intentional and some can be negligent.

---

[6] Plaintiffs also suggest in their brief that Wis. Stat. § 893.43 could apply to their claims, as contract claims, thereby providing a six-year statute of limitations. Section § 893.43 reads, in pertinent part:

> An action upon any contract, obligation or liability, express or implied, including an action to recover fees for professional services . . . shall be commenced within 6 years after the cause of action accrues or be barred.

However, we note that the circuit court dismissed the breach of contract claims, and that decision has not been brought before us.

¶ 17. Plaintiffs argue that the defendants' conduct contravened their duties as fiduciaries because they acted in their own self-interest due to their ability to purchase some of the Trust-units plaintiffs sold. They assert, and the circuit court found, that telling the plaintiffs they had to sell back their Trust-units over a one to five year period, while not telling them that the JESTA provided for a ten-year sell-back opportunity if they retired, was not done in good faith. At the same time, plaintiffs assert that these actions constitute negligent breaches of fiduciary duty, are not intentional acts, and therefore their claims come under the six-year statute of limitations in either Wis. Stat. §§ 893.52 or 893.53.[7]

---

[7] In support of their position, plaintiffs cite an extensive list of Wisconsin cases in which they contend the courts applied a six-year statute of limitations to a breach of duty on the part of a trustee. However, the cases cited are not on point. *See Younger v. Rosenow Paper & Supply Co.,* 51 Wis. 2d 619, 626, 188 N.W.2d 507 (1971) (analyzing breach of contract claim); *Hammes v. First Nat'l Bank & Trust Co. of Racine,* 79 Wis. 2d 355, 359, 255 N.W.2d 555 (1977) (concluding that summary judgment was improperly granted on negligence and breach of fiduciary duty claims, but making no determination of any statute of limitations issue); *Policemen's Annuity & Benefit Fund of Milwaukee v. City of Milwaukee,* 2001 WI App 144, ¶ 13, 246 Wis. 2d 196, 630 N.W.2d 236 (concluding the six-year statute of limitations in Wis. Stat. § 893.43 was erroneously applied and that the city is estopped from raising the statute of limitations); *Welter v. City of Milwaukee,* 214 Wis. 2d 485, 488–89, 571 N.W.2d 459 (Ct. App. 1997) (analyzing a municipal ordinance where no breach of fiduciary duty was alleged); *Schroeder v. Gateway Transp. Co.,* 53 Wis. 2d 59, 67, 191 N.W.2d 860 (1971) (relying on *Younger* to conclude that the statute of limitations for an action upon any other contract applies to an action on a pension plan); *Green v. Granville Lumber & Fuel Co.,* 60 Wis. 2d 584, 590, 211 N.W.2d 467 (1973) (concluding that "six-year statute of limitations . . .

¶ 18. The defendants, on the other hand, argue that according to our decisions in *Beloit Liquidating* and *Warmka v. Hartland Cicero Mutual Insurance Co.,* 136 Wis. 2d 31, 400 N.W.2d 923 (1987), breach of fiduciary duty claims are intentional tort claims and are time-barred by Wis. Stat. § 893.57. They note that as a result, the plaintiffs are in a catch-22 that leaves them without an actionable claim no matter how the defendants' conduct is classified, because any remaining claims not considered a breach of the fiduciary duty of loyalty constitute claims of negligence that are expressly precluded by the limitation of liability provision in Clause 33 of the JESTA.

¶ 19. The defendants argue that the court of appeals was correct in concluding that *Beloit Liquidating* controlled. In *Beloit Liquidating,* 270 Wis. 2d 356, ¶ 40, we held that Wis. Stat. § 893.57 barred a claim for breach of fiduciary duty where a liquidating trust that was established under a Chapter 11 debtor's plan brought an action against the debtor's officers and directors. It was alleged that the officers and directors had "allowed the corporation to enter into money-losing contracts, [had] failed to keep adequate accounting systems to deal with the losses, [had] continued operations after prudent managers would have shut the corporation down, and [had] failed to disclose the

for actions on contract, governs"); *Jensen v. Janesville Sand & Gravel Co.,* 141 Wis. 2d 521, 527–28, 415 N.W.2d 559 (Ct. App. 1987) (holding that § 893.43 applies to a contract action against employer for past due pension payments); *Atkinson v. Everbrite, Inc.,* 224 Wis. 2d 724, 726, 733, 592 N.W.2d 299 (Ct. App. 1999) (concluding that widow had only contract claims against her deceased husband's former employer); *Noonan v. Nw. Mut. Life Ins. Co.,* 2004 WI App 154, ¶¶ 31–32, 276 Wis. 2d 33, 687 N.W.2d 254 (applying § 893.43 to breach of contracts claims).

corporation's losses." *Id.,* ¶ 10. The court of appeals in its decision in the case before us reasoned that for purposes of deciding whether the claimed breach of fiduciary duty is an intentional tort, the conduct of the Trustees here was not significantly different from what was held to be an intentional tort by the officers and directors in *Beloit Liquidating. Zastrow,* 286 Wis. 2d 416, ¶ 16.

¶ 20. The plaintiffs respond to the alleged precedent of *Beloit Liquidating* and *Warmka* by asserting that in *Warmka,* the basis for the court's decision regarding the statute of limitations was a rejection of a one-year contractual statute of limitations and also that the suit had been commenced within two years. The plaintiffs also argue *Warmka* never actually decided the issue of whether breaches of fiduciary duty are always intentional torts, both because of the nature of the holding in the case and because it involved only intentional bad faith insurance practices.

¶ 21. The parties agree that the Trustees are fiduciaries with regard to the Trust and with regard to the plaintiffs. They do dispute whether Journal Communications and the Trust, itself, is a fiduciary of the plaintiffs. Plaintiffs' claims of breach of fiduciary duty are focused solely on the actions and omissions of the Trustees. Therefore, we need analyze only the actions of the Trustees in order to decide the questions presented by this review.

¶ 22. It is well established in Wisconsin that trustees have a fiduciary duty in managing a trust. *Hatleberg v. Norwest Bank Wis.,* 2005 WI 109, ¶ 21, 283 Wis. 2d 234, 700 N.W.2d 15 (citing *Sensenbrenner v. Sensenbrenner,* 76 Wis. 2d 625, 635, 252 N.W.2d 47 (1977)). Furthermore, Wisconsin has enacted the Uni-

form Fiduciaries Act, which defines "fiduciary" to include "a trustee under any trust . . . ." Wis. Stat. § 112.01(1)(b).

¶ 23. What is at issue, and what we must determine, is whether the breach of fiduciary duty claims the circuit court found the plaintiffs proved were properly dismissed because the two-year statute of limitations applies to them. The circuit court found the Trustees breached their fiduciary duty to the plaintiffs because the Trustees told the plaintiffs "they had to sell-back their Trust units over a 1 to 5 year period, and no information was provided plaintiffs in writing about the availability of the 10–year sell-back right upon retirement." *Mem. Decision After Trial* 15 (Jefferson County Cir. Ct. Mar. 4, 2003). The circuit court's factual findings and legal conclusion in that regard are not contested.

## C. Fiduciary Duty

¶ 24. In order to better understand the claims tried here, we begin by examining the nature of a fiduciary duty. We are assisted by various scholarly sources and by established principles of fiduciary law set out in Wisconsin appellate court decisions.

¶ 25. The foundations of fiduciary law originated in courts of equity where it was developed to address claimed abuses by one who had accepted a position of authority with regard to the affairs of another. Eileen A. Scallen, *Promises Broken vs. Promises Betrayed: Metaphor, Analogy, and The New Fiduciary Principle*, 1993 U. Ill. L. Rev. 897, 905–06 (hereinafter, *Promises Broken vs. Promises Betrayed*). The term "fiduciary" has been applied to many different types of relationships that have varying obligations, e.g., "trustee to beneficiary,

guardian to ward, agent to principal, attorney to client."
*Id.,* at 905 n.22. Courts have developed fiduciary law by
analogy: by identifying paradigm cases in which a
fiduciary relationship was found to exist and examining
whether the relationship under consideration "is suffi-
ciently like those in the paradigm cases to support an
extension of the obligation to that relationship." Debo-
rah A. DeMott, *Beyond Metaphor: An Analysis of
Fiduciary Obligation,* 1988 Duke L.J. 879, 879 (herein-
after, *Beyond Metaphor*).

¶ 26. Perhaps as a result of this long evolution,
clearly defining the duties of a fiduciary in a particular
situation is difficult, as Deborah A. DeMott aptly ex-
plained:

> [A] [f]iduciary obligation is one of the most elusive
> concepts in Anglo-American law. Applicable in a variety
> of contexts, and apparently developed through a juris-
> prudence of analogy rather than principle, the fiduciary
> constraint on a party's discretion to pursue self-interest
> resists tidy categorization. Although one can identify
> common core principles of fiduciary obligation, these
> principles apply with greater or lesser force in different
> contexts involving different types of parties and rela-
> tionships. Recognition that the law of fiduciary obliga-
> tion is situation-specific should be the starting point for
> any further analysis.

*Id.*

■

¶ 27. However, in any analysis of a claimed breach
of fiduciary duty, there are two central questions to
address: was the relationship a fiduciary relationship,
and if so, what is the nature of the fiduciary duty that
is at issue? *Promises Broken vs. Promises Betrayed,
supra,* at 905. Because there is no question that the

Trustees who managed the Trust under the terms set out in the JESTA were fiduciaries, at least in regard to the plaintiffs, we explore the second question.

■■

¶ 28. The expression, fiduciary duty, relates to those obligations that are peculiar to a fiduciary and are based on the conscious undertaking of a special position with regard to another. William A. Gregory, *The Fiduciary Duty of Care: A Perversion of Words*, 38 Akron L. Rev. 181, 185–86 (2005) [hereinafter, *The Fiduciary Duty of Care*]. A consistent facet of a fiduciary duty is the constraint on the fiduciary's discretion to act in his own self-interest because by accepting the obligation of a fiduciary he consciously sets another's interests before his own. *Beyond Metaphor, supra,* at 882.

■■

¶ 29. This constraint on acting in one's own self-interest has been described as a fiduciary's duty of loyalty. *Id.* However, the duty of loyalty is broader than simply requiring the fiduciary to refrain from acting in his own self-interest.[8] *The Fiduciary Duty of Care,*

---

[8] The concurrence takes issue with the assertion that the fiduciary duty of loyalty is broader than requiring that the fiduciary not act in his own self-interest. Concurrence, ¶ 57. We stand by the statement. Recently, the court of appeals examined an alleged disclosure of confidential information as a claimed breach of the duty of loyalty. *Aon Risk Servs., Inc. v. Liebenstein,* 2006 WI App 4, ¶ 31, 289 Wis. 2d 127, 710 N.W.2d 175. The Restatement (Second) of Agency § 395 (1958) includes within the duty of loyalty the duty not to disclose confidential information that was given to the fiduciary by his principal:

> [A]n agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency . . . .

*supra,* at 183. For example, it also may require keeping a beneficiary's information confidential, *id.* at 193 n.107 (*citing* 2 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 14.1 (4th ed. 1996)), and fully disclosing to the beneficiary all information relevant to the beneficiary's interest, *id.* at 183–85. *Webster* defines loyalty as "tenacious adherence" to principle and an obligation "based on individual choice." *Webster's Third New International Dictionary* 1342 (14th ed. 1961).

¶ 30. A breach of the duty of loyalty imports something different from mere incompetence; it "connotes disloyalty or infidelity." *The Fiduciary Duty of Care, supra,* at 183 (citation omitted). At its core, a fiduciary's duty of loyalty involves a state of mind, so that a claimed breach of that duty goes beyond simple negligence. For example, a lawyer can breach his fiduciary duty of loyalty to a client by entering into a contract with a client without full disclosure that the contract will benefit the lawyer and potentially disadvantage the client. However, simple carelessness in drafting a will so that it does not achieve the tax savings that the client requested is negligence. Neither duty is of lesser importance; they are just different obligations. Said otherwise, "not every legal claim arising out of a relationship with fiduciary incidents will give rise to a claim for breach of fiduciary duty." *Id.* at 186 (citation omitted).

¶ 31. The courts of Wisconsin have followed the general principles we set out above. For example, we have held that a fiduciary relationship results in the legal assumption of the "obligation to act for another's benefit." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck,* 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985). The

fiduciary's duty of loyalty is "to act solely for the benefit of the principal in all matters connected with the agency, even at the expense of the agent's own interests." *Losee v. Marine Bank,* 2005 WI App 184, ¶ 16, 286 Wis. 2d 438, 703 N.W.2d 751 (citation omitted). Courts have characterized that obligation as one of fidelity and loyalty. *Id.,* ¶ 19 (citation omitted). The fiduciary relationship comes into being by the manifestation of consent by the fiduciary to act on behalf of another. *State v. Knight,* 2000 WI App 16, ¶ 12, 232 Wis. 2d 305, 606 N.W.2d 291 (citing Restatement (Second) of Agency § 1(1) (1958)). The court of appeals recently examined the breach of the duty of loyalty based on the allegation that an employee gave his employer's confidential information to a competitor of the employer. *Aon,* 2006 WI App 4, ¶ 31. We have also held that an employee's theft from his employer is a breach of an employee's duty of loyalty. *Hartford Elevator, Inc. v. Lauer,* 94 Wis. 2d 571, 580, 289 N.W.2d 280 (1980).

¶ 32. A fiduciary relationship may be created by contract, such as the relationship between a trust and trustee. *Prod. Credit Ass'n of Lancaster of Wis. v. Croft,* 143 Wis. 2d 746, 752, 423 N.W.2d 544 (Ct. App. 1988). Or, it may arise from a formal legal relationship such as attorney and client, guardian and ward. *Id.*

¶ 33. When the fiduciary is a trustee, generally the tasks that the trustee is agreeing to undertake are set out in a trust agreement. *Hatleberg,* 283 Wis. 2d 234, ¶ 19. "[T]he instrument creating the trust . . . is to be looked to for stipulations fixing the obligations of the parties." *Id.* (citing *McGeoch Bldg. Co. v. Dick & Reuteman Co.,* 253 Wis. 166, 175, 33 N.W.2d 252 (1948)). A

trustee must comply with the terms of the trust under which he agrees to perform certain tasks. *Saros v. Carlson,* 244 Wis. 84, 88, 11 N.W.2d 676 (1943).

¶ 34. We reviewed the duty of loyalty of a trustee in *Hammes v. First National Bank & Trust Co. of Racine,* 79 Wis. 2d 355, 255 N.W.2d 555 (1977). *Hammes* required us to consider the breach of fiduciary duty claims of trust beneficiaries brought against former trustees to determine whether those claims were barred under principles of res judicata. *Id.* at 359. In deciding whether the claims could be maintained, we reviewed the common law relating to the obligations of a trustee. One of the allegations made was that the trustees did not disclose all the material facts that should have been disclosed to the beneficiaries before the beneficiaries agreed to sell their stock and that the lack of disclosure benefited the trustees. *Id.* at 367. We explained, "It is a fundamental principle of the law of trusts that the trustee is under a duty of undivided loyalty to the beneficiaries of the trust." *Id.* (citing *Dick & Reuteman Co. v. Doherty Realty Co.,* 16 Wis. 2d 342, 348, 114 N.W.2d 475 (1962)). We explained that this duty of loyalty requires that a trustee not profit, personally, from his position as a trustee. *Id.* at 368. We pointed out that the duty of loyalty also encompasses a "trustee's affirmative duty to make full disclosure" of all facts relevant to the transaction the beneficiary is about to undertake. *Id.* at 369.

¶ 35. With the general principles of the fiduciary duty of loyalty in mind, we are persuaded that there is a distinct difference between a claim for the breach of the fiduciary duty of loyalty and a claim for the breach of the duty of ordinary care, i.e., a negligence claim. That difference arises from the conscious assumption of

447

the role of fiduciary, on which the law imposes an obligation of absolute loyalty in all matters relating to the object of the duty, e.g., the beneficiaries of a trust. A fiduciary agrees to assume a position of authority in regard to the affairs of another in which position the fiduciary may have access to confidential information or to property of the object of the fiduciary's obligation. Therefore, if a trustee does not make a full disclosure of material facts to a beneficiary, that conduct is a breach of the trustee's duty of loyalty. The law concludes this breach is intentional. *Beloit Liquidating*, 270 Wis. 2d 356, ¶ 40. Similarly, if a trustee personally profits from his role as a trustee, that conduct is a breach of the trustee's duty of loyalty, and the law concludes it is intentional. *Cmty. Nat'l Bank v. Med. Benefit Adm'rs, LLC*, 2001 WI App 98, ¶ 8, 242 Wis. 2d 626, 626 N.W.2d 340.

¶ 36. The concept that a fiduciary can comport with his fiduciary duty of loyalty, but nevertheless violate the duty of ordinary care, also is supported by the standard set out in Wis. Stat. § 112.01(1)(c), the Wisconsin version of the Uniform Fiduciaries Act. Section 112.01(1)(c) states: "A thing is done 'in good faith' within the meaning of this section, when it is in fact done honestly, whether it be done negligently or not." Section 112.01(1)(c) recognizes that negligent conduct does not rise to the level of a breach of fiduciary duty. We conclude that good faith is encompassed within what we have more succinctly referred to as the duty of loyalty that arises when a fiduciary role is accepted.

¶ 37. Why does the law conclude that the breach of a fiduciary duty of loyalty is an intentional tort? It does so because the fiduciary consciously agreed to be

committed to the interests of those to whom the fiduciary assumed that special role. For example, this commitment overlays all of the tasks that a trustee agrees to undertake in a given trust agreement. Whether a breach of the fiduciary duty of loyalty will lie against a trustee will depend upon what facts are proved. As explained above, there are a number of ways in which this breach can occur, e.g., self-dealing by the trustee; failing to disclose material information to the beneficiary; disclosing the beneficiary's confidential information.

¶ 38. Our conclusion that a breach of the fiduciary duty of loyalty is grounded in an intentional tort is consistent with all Wisconsin appellate decisions that have mentioned the issue. Most recently, in *Beloit Liquidating,* 270 Wis. 2d 356, ¶ 40, we held that Wis. Stat. § 893.57 applies to breach of fiduciary duty claims, although we did not discuss in detail our reasoning for that holding. We did have before us the assertion that the trustee acted negligently, and we rejected that contention. *Id.,* ¶¶ 10, 33. Previously, in *Warmka,* 136 Wis. 2d at 35, we held that "[t]he breach of the fiduciary duty is an intentional tort" and that § 893.57 provides the applicable statute of limitations. In *Warmka,* we reviewed an insured's cause of action against an insurer for breach of contract and bad faith, and also addressed the question of which statute of limitations was applicable to the claims. We concluded that the insurer had a duty that was analogous to a fiduciary duty owed to the insured and that a breach of fiduciary duty is an intentional tort, governed by § 893.57. Therefore, we held that it was the applicable statute of limitations for the claim presented.

¶ 39. Twice, federal courts have followed these cases in applying the two-year statute of limitations to breach of fiduciary duty claims. *See McMahon v. Pa. Life Ins. Co.,* 891 F.2d 1251, 1255 (7th Cir. 1989)

(affirming the district court's dismissal of the breach of fiduciary duty claim based on our decision in *Warmka*); *see also Lewis v. Paul Revere Life Ins. Co.*, 80 F. Supp. 2d 978, 1004 (E.D. Wis. 2000) (concluding that insurer's breach of fiduciary duty claim against broker who sold policy, but did not fully disclose all facts relevant to the proposed insured, was time barred under *Warmka*).

¶ 40. Our conclusion that a breach of the fiduciary duty of loyalty is an intentional tort is also consistent with the decisions of courts in many other jurisdictions. For example, in *Brosted v. Unum Life Insurance Co. of America*, 421 F.3d 459 (7th Cir. 2005), where the plaintiff's claim was based on a miscalculation and overstatement of benefits, the court held no claim for breach of fiduciary duty existed because there was no evidence that the misrepresentation was intentional. *Id.* at 466. It would have taken an intentional misrepresentation to breach the fiduciary's duty of loyalty. *Id.* In *Crabtree v. Metalworks & Hydra-Assembly, Inc.*, 2003 WL 42442 (Ohio App. 10th Dist.), where minority shareholders claimed a breach of fiduciary duty based on the failure to provide necessary information, the court classified the breach of fiduciary duty "just like other intentional torts." *Crabtree*, 2003 WL 42442 at 2 (citing *Schafer v. RMS Realty*, 741 N.E.2d 155 (Ohio Ct. App. 2000). In *Lundstrom Realty Advisors, Inc. v. Schickedanz Bros.-Riviera Ltd.*, 856 So. 2d 1117 (Fla. Dist. Ct. App. 2003), the court concluded that plaintiff had four years in which to bring its claim for breach of fiduciary duty under the applicable Florida statute of limitations for intentional torts. *Id.* at 1123. In *Posner v. Essex Insurance Co.*, 178 F.3d 1209 (11th Cir. 1999), the court applied Florida law and noted that a breach of fiduciary duty claim is an intentional tort in Florida. *Id.* at 1219.

## D. Plaintiffs' Claims

¶ 41. The fiduciary relationship between the plaintiffs and the Trustees was created by contract, the JESTA; accordingly, the tasks that the Trustees agreed to undertake are as set out in the JESTA. However, the state of mind that the Trustees were required to employ as they undertook their contractually agreed upon tasks is one of absolute loyalty to the beneficiaries of the Trust, which includes the plaintiffs. Their duty of loyalty required the Trustees to make a full disclosure to the Perry employees, as a group, of all material facts that related to the consequences of retirement before the sale of Perry. One of those facts was that if the plaintiffs who were eligible for retirement retired before the Perry sale closed, they would be eligible for a ten-year sell-back opportunity for their Trust-units. Because the Trust-units have always appreciated in value, the plaintiffs needed to know that they could retain the Trust-units over a longer period of time so they could decide if they wished to retire in order to have this opportunity. Any employee who retired would be required to apply for employment with the buyer of Perry's assets, rather than having employment by the new owner immediately available on the same terms and conditions as the employee had at Perry.

¶ 42. The circuit court found that the Trustees breached their fiduciary duty by telling the plaintiffs "they had to sell-back their Trust units over a 1 to 5 year period, and no information was provided plaintiffs in writing about the availability of the 10–year sell-back right upon retirement." *Mem. Decision,* at 15.[9] These

---

[9] The circuit court also found that the Trustees had not put aside the discretion of one who is not a fiduciary to act in his

found facts prove that the Trustees created circumstances that adversely affected the plaintiffs' ability to make an informed decision about whether to retire and then apply for work with the new owner or whether to proceed immediately to employment with the new owner. This constitutes a breach of the Trustees' duty of loyalty, which the Trustees voluntarily undertook when they agreed to be Trustees of the Trust. As such, the breach of fiduciary duty of loyalty, which the plaintiffs proved, is an intentional tort that is precluded by the two-year statute of limitations set out in Wis. Stat. § 893.57.[10]

## III. CONCLUSION

¶ 43. We conclude that the circuit court found that the Trustees created circumstances that adversely affected the plaintiffs' interests by giving plaintiffs

own self-interest, that one who is a fiduciary must put aside, because the Trustees were eligible to purchase some of the Trust-units that the plaintiffs were forced to sell back. However, the circuit court made no finding that any Trustee had done so. Therefore, there were no findings that the Trustees had actually breached their fiduciary duty by self-dealing.

[10] The plaintiffs before us argued that the discovery rule, explained in *John Doe 67C v. Archdiocese of Milwaukee,* 2005 WI 123, ¶ 24, 284 Wis. 2d 307, 700 N.W.2d 180, should apply to the accrual of their claims of negligence. Plaintiffs assert that their claims accrued when the last Trust-unit was sold, rather than on the date that the incomplete information was given to them, as the defendants assert. We do not address this issue because we conclude that the breach of the duty of loyalty that the trial court found is controlled by the two-year statute of limitations of Wis. Stat. § 893.57. The plaintiffs commenced this action April 7, 2000, and they sold their last Trust-unit before April 6, 1998. Therefore, plaintiffs do not contend that if the two-year statute of limitations applies, their claims survive.

incomplete information relative to plaintiffs' holdings, which we conclude is a breach of the fiduciary duty of loyalty, an intentional tort. As a result, the two-year statute of limitations found in Wis. Stat. § 893.57, which is applicable to intentional torts, requires dismissal of the lawsuit. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 44. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I write separately (1) to set forth the issue presented and my answer thereto; and (2) to provide context for the case regarding claims of a trustee's breach of fiduciary duty and claims of negligence.

I

¶ 45. The majority opinion begins by stating the issue of law presented in the instant case as "whether a claim for breach of fiduciary duty of loyalty must be intentional, or whether it can also be based on negligence."[1]

¶ 46. The plaintiffs present the issue as follows: whether a claim for a negligent breach of fiduciary duty is governed by the two-year statute of limitations in Wis. Stat. § 893.57, or by the six-year statute of limitations in either Wis. Stat. § 893.52 or § 893.43.[2] The

---

[1] Majority op., ¶ 1. Compare with a different statement of the issue at majority op., ¶ 23: "whether the breach of fiduciary duty claims the circuit court found the plaintiffs proved were properly dismissed because the two-year statute of limitations applies to them."

[2] The majority opinion further misstates the issue by limiting its holding to the "fiduciary duty of loyalty." As I discuss in

defendants and the amicus briefs accept and respond to the issue as stated by the plaintiffs.

¶ 47. I agree with the issue as stated by the parties. The present case does not require this court to determine whether a claim for the Trustees' breach of fiduciary duty of loyalty must be intentional or may be based on negligence. We need determine only what statute of limitations applies to the claim for breach of fiduciary duty presented in the instant case.[3]

¶ 48. The circuit court determined that the Trustees breached their fiduciary duty and applied the six-year negligence statute of limitations. The circuit court reasoned as follows: The Trustees had a fiduciary duty of loyalty. Ordinarily self-dealing is a violation of the fiduciary duty of loyalty. The trust instrument allowed the Trustees as employees of Journal Communications to buy the plaintiffs' stock, which might be considered self-dealing. The circuit court concluded that, as a result, the Trustees were under a heightened duty to disclose information to the plaintiffs in order to fulfill the Trustees' fiduciary duty of loyalty. The Trustees did not inform the employees fully and correctly as required by their heightened duty to disclose. The Trustees' failure to inform the plaintiffs correctly was

Part II of this opinion, this case is not only a fiduciary duty of loyalty case. Rather, the plaintiffs allege breaches of other fiduciary duties.

[3] The majority opinion also states that because the plaintiffs' claims for breach of fiduciary duty "are focused solely on the actions and omissions of the Trustees . . . we need analyze only the action of the Trustees in order to decide the questions presented by this review." Majority op., ¶ 21. The complaint in the instant case, however, also alleges breach of fiduciary duty by Journal Communications and the trust itself. The majority opinion is silent.

not intentional, just negligent, and, accordingly, ruled the circuit court, the six-year negligence statute of limitations applied.

¶ 49. In contrast, the majority opinion concludes that the two-year statute of limitations for intentional torts, Wis. Stat. § 893.57, applies to claims for breach of fiduciary duty based on breach of the fiduciary duty of loyalty.

¶ 50. *Beloit Liquidating Trust v. Grade,* 2004 WI 39, 270 Wis. 2d 356, 677 N.W.2d 298, appears to control the outcome of the instant case.[4] *See also Warmka v. Hartland Cicero Mut. Ins. Co.,* 136 Wis. 2d 31, 34–35, 400 N.W.2d 923 (1987) (cause of action for insurer's bad faith; insurer's duty to insured analogized to fiduciary duty; breach of fiduciary duty is intentional tort under statute of limitations). In *Beloit Liquidating,* this court considered allegations that corporate officers and directors negligently allowed the corporation to enter into money-losing contracts, failed to keep adequate accounting systems, continued operations after prudent managers would have shut down the corporation, and failed to disclose corporate losses.[5] These allegations fit within several fiduciary duties of officers and directors of corporations, including the duty to keep and render accounts and the duty to furnish information. It does not appear that the plaintiffs in *Beloit Liquidating* alleged breach of the fiduciary duty of loyalty. This court held in *Beloit Liquidating,* despite the fact that the claim was that the officers and directors were negligent in performing fiduciary duties, that "a breach

---

[4] *See Zastrow v. Journal Commc'ns, Inc.,* 2005 WI App 178, ¶ 2, 286 Wis. 2d 416, 703 N.W.2d 673.

[5] *Beloit Liquidating Trust v. Grade,* 2004 WI 39, ¶ 10, 270 Wis. 2d 356, 677 N.W.2d 298.

of fiduciary duty claim involves an intentional tort."[6] The court therefore held that the two-year statute of limitations for intentional torts, Wis. Stat. § 893.57, barred the claims in that case.[7]

¶ 51. As the court of appeals observed in the instant case, this court in *Beloit Liquidating* "described the breach of fiduciary duty claim as an intentional tort even though the conduct alleged in that case was negligently allowing certain contracts and failing to keep adequate accounts, act prudently and disclose losses, rather than the type of bad faith conduct or intentionally wrongful conduct the circuit court here considered essential to the application of § 893.57."[8] Thus the court of appeals simply concluded that *Beloit Liquidating* controlled the outcome of the instant case.

¶ 52. *Beloit Liquidating* involved numerous issues that this court discussed at length. This court did not discuss how it reached its conclusion regarding the application of the two-year statute of limitations and cited no authority for its conclusion that breach of fiduciary duty is an intentional tort or that the two-year statute of limitations applied in that case.

¶ 53. The plaintiffs in the instant case distinguish *Beloit Liquidating,* asserting that it did not involve claims of negligent breach of fiduciary duties because the statutes and the business judgment rule prevented action for negligent breach. The plaintiffs assert that *Beloit Liquidating* simply found that the corporate officers and directors owed no duty to the creditors.

---

[6] *Beloit Liquidating,* 270 Wis. 2d 356, ¶ 40.

[7] *Id.,* ¶ 40; *see also Warmka v. Hartland Cicero Mut. Ins. Co.,* 136 Wis. 2d 31, 34–35, 400 N.W.2d 923 (1987).

[8] *Zastrow,* 286 Wis. 2d 416, ¶ 14.

¶ 54. In the interest of stare decisis and relying on the text of *Beloit Liquidating,* I conclude that *Beloit Liquidating* controls the outcome of the instant case and creates a uniform, predictable rule that the statute of limitations applicable in all claims of any breach of fiduciary duty is the two-year statute. This conclusion should end the majority opinion in the instant case.

## II

¶ 55. The majority opinion in this case, however, does not stop at deciding the statute of limitations issue in the instant case based on *Beloit Liquidating.* It has raised more complex issues than the application of the statute of limitations to all claims asserting a breach of fiduciary duty by a trustee of an express trust. Instead of explaining settled law, it appears that the majority opinion can be interpreted as making new law regarding the nature and content of fiduciary duty and the duty of care.

¶ 56. In some places, the majority opinion puts forth a novel view of fiduciary duty that the only fiduciary duty is a duty of loyalty.[9] The majority opinion might be interpreted as herding some or all fiduciary duties into the pasture of the duty of loyalty.

¶ 57. The majority opinion concludes, for example, that the duty of confidentiality and the duty to furnish information are aspects of the duty of loyalty.[10]

---

[9] *See* majority op., ¶¶ 22–35, 41–42.

[10] Majority op., ¶ 29 ("[T]he duty of loyalty is broader than simply requiring the fiduciary to refrain from acting in his own self-interest. For example, it also may require keeping a beneficiary's information confidential and fully disclosing to the beneficiary all information relevant to the beneficiary's interest." (Citations omitted.)).

Yet the authority cited by the majority opinion does not support this statement. On the contrary, the cited law review article makes clear that the duty of loyalty is one of the fiduciary duties, but that there are other duties as well.[11]

¶ 58. I am concerned whether the majority opinion is creating a new body of fiduciary law for trustees that is inconsistent with prior case law in this state and inconsistent with the view taken in the Restatement (Second) of Trusts and well-known treatises on the law of trusts.

¶ 59. While broad in scope, a trustee's fiduciary duty of loyalty does not, in ordinary trust parlance, encompass every fiduciary duty.[12] It is hornbook, black-letter law that a trustee has many fiduciary duties, one of which is the duty of loyalty.[13] While a trustee's duty

---

[11] *See* William A. Gregory, *The Fiduciary Duty of Care: A Perversion of Words,* 38 Akron L. Rev. 181, 183 (citing Restatement (Second) of Agency §§ 379–384, 387–398 (1958)) ("An agent owes various duties to its principal. The duty of loyalty is the most significant of them. The courts have expanded the duties of an agent over the years by describing a duty to disclose and a duty of candor." (Footnote references omitted.)).

[12] *See, e.g., Hammes v. First Nat'l Bank & Trust Co. of Racine,* 79 Wis. 2d 355, 369, 255 N.W.2d 555 (1977) (discussing fiduciary duty of loyalty, and then discussing separate fiduciary duty of full disclosure); *Modern Materials, Inc. v. Advanced Tooling Specialists, Inc.,* 206 Wis. 2d 435, 442, 557 N.W.2d 835 (Ct. App. 1996) (citing *Racine v. Weisflog,* 165 Wis. 2d 184, 190, 477 N.W.2d 326 (Ct. App. 1991)) ("It is well established that a corporate officer or director is under a fiduciary duty of loyalty, good faith and fair dealing in the conduct of corporate business.").

[13] 2A Austin Wakeman Scott & William Franklin Fratcher, *Scott on Trusts* §§ 169–185 (4th ed. 1987) (listing 17 distinct fiduciary duties of a trustee); Restatement (Second) of Trusts §§ 169–186 (1959) (listing 17 distinct fiduciary duties of a trustee).

of loyalty may be described as "the most fundamental duty,"[14] it is not the only one.

¶ 60. Restatement (Second) of Trusts § 170 describes the duty of loyalty as the duty to administer the trust solely in the interest of the beneficiary:

> (1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.
>
> (2) The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know.[15]

¶ 61. The treatises and texts state that the fiduciary duties of a trustee include not only the duty of loyalty but also the duty to administer the trust,[16] the

---

The duties listed in the Restatement and *Scott on Trusts* are substantially the same. Both clearly include the duty of loyalty as a fiduciary duty distinct from the other fiduciary duties listed.

[14] 2A Scott & Fratcher, *supra* note 13, § 170; George Gleason Bogert & George Taylor Bogert, *The Law of Trusts and Trustees* § 543 at 217 (rev. 2d ed. replacement vol. 1993).

[15] Similarly, *Scott on Trusts* defines the fiduciary duty of loyalty as "the duty of a trustee to administer the trust solely in the interest of the beneficiaries. [A trustee] is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiaries." 2A Scott & Fratcher, *supra* note 13, § 170. For another discussion of the duty of loyalty, see Bogert & Bogert, *supra* note 14, §§ 543–543(V).

[16] 2A Scott & Fratcher, *supra* note 13, § 169; Restatement (Second) of Trusts § 169 (1959).

duty to keep and render accounts,[17] and the duty to furnish information.[18] For example, a trustee might breach the duty to furnish information by accidentally providing incorrect or inaccurate information about the content of the trust corpus or the beneficiary's rights under the trust.

¶ 62. Another fiduciary duty of a trustee to the beneficiary is the duty to exercise care and skill in administering the trust. The trustee's fiduciary duty to the beneficiary to administer the trust with care and skill is described in the Restatement (Second) of Trusts:

> The trustee is under a duty to the beneficiary in administering the trust to exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property; and if the trustee has or procures his appointment as trustee by representing that he has greater skill than that of a man of ordinary prudence, he is under a duty to exercise such skill.[19]

[17] *Richards v. Barry,* 39 Wis. 2d 437, 441–42, 159 N.W.2d 660 (1968) (duty to keep accounts); *Leonard v. Ingram,* 202 Wis. 117, 124–26, 230 N.W. 715 (1930) (same); 2A Scott & Fratcher, *supra* note 13, § 172; Restatement (Second) of Trusts § 172 (1959).

[18] 2A Scott & Fratcher, *supra* note 13, § 173 ("The trustee is under a duty to the beneficiaries to give them on their request at reasonable times complete and accurate information as to the administration of the trust."); Restatement (Second) of Trusts § 173 (1959).

For another example of stating the trustee's duties, see Bogert & Bogert, *supra* note 14, §§ 541 (exercise reasonable care and skill), 582 (protect and preserve trust assets), 596 (earmark and separate trust property), 611 (make trust property productive), 975 (furnish information to beneficiary).

[19] Restatement (Second) of Trusts § 174 (1959); *see also* 3 Scott & Fratcher, *supra* note 13, § 174; *Sensenbrenner v.*

¶ 63. According to the treatises, a trustee's breach of a fiduciary duty can be intentional or negligent, and in certain circumstances there may be liability without fault.[20]

¶ 64. As I have said, the majority opinion might be read to fit some or all the trustee's fiduciary duties within the fiduciary duty of loyalty. However, the majority opinion might also be read to say that the other duties normally thought of as a trustee's fiduciary duties are not fiduciary duties at all, but are duties owed by many persons, such as the duty of ordinary care, and are not analyzed as breach of fiduciary duty. Thus, the majority opinion addresses the relationship between a trustee's fiduciary duties and the non-fiduciary duty of ordinary care.

¶ 65. If this latter view is an accurate characterization of the majority opinion, it is making very broad statements about the nature and content of fiduciary duties.

¶ 66. The majority opinion relies on commentators and cases addressing the relationship between fiduciary duties and the non-fiduciary duty of care in the context of fiduciaries other than trustees. It appears that this literature is primarily in the context of the

---

*Sensenbrenner,* 76 Wis. 2d 625, 635, 252 N.W.2d 47 (1977) (trustees have duty to employ "diligence, prudence, and absolute fidelity").

[20] 3 Scott & Fratcher, *supra* note 13, § 201 (breach of trust ordinarily by intentional or negligent conduct, but there may also be liability without fault); Restatement (Second) of Trusts § 201 (1959) (same).

For example, where a trustee under a mistake of law makes payment to a person not entitled as beneficiary, he is liable to the beneficiary, even though his conduct was neither intentional nor negligent. *Galard v. Winans,* 74 A. 626 (Md. 1909).

461

duties owed by an attorney to a client or the duty other agents owe to principals, such the duty of corporate officers and directors to shareholders.[21] The literature cited by the majority opinion criticizes cases confusing an attorney's fiduciary duties to a client and an attorney's duty of due care in performance of services. According to the commentators, the latter is the basis for a malpractice negligence action, not an action for breach of fiduciary duty. The commentators suggest that these two types of breach of duty should be analyzed separately because of differences regarding proof of causation, proof of damages, and applicable statutes of limitations.

¶ 67. At first blush, it appears that in *Hatleberg v. Norwest Bank of Wisconsin*, 2005 WI 109, 283 Wis. 2d 234, 700 N.W.2d 15, this court created confusion regarding the relationship between a fiduciary duty and a non-fiduciary duty of ordinary care. In *Hatleberg* this court addressed claims relating to an irrevocable trust that did not include certain provisions necessary to avoid tax liability upon the settlor's death. The bank that was trustee was aware of the defect but did not reveal it to the settlor. The settlor's estate sued the bank trustee for erroneously informing the settlor, after creation of the trust, that she would avoid tax liability by annually depositing additional funds in the trust.[22]

---

[21] *See, e.g.*, Gregory, *supra* note 11; Ray Ryden Anderson & Walter W. Steele, Jr., *Fiduciary Duty, Tort and Contract: A Primer on the Legal Malpractice Puzzle*, 47 S.M.U. L. Rev. 235 (1994) (also comparing contract actions); *Smith v. Mehaffy*, 30 P.3d 727 (Col. Ct. App. 2000); *Bristol & West Bldg. Soc'y v. Mothew*, [1998] Ch. 1, at 17, 1996 WL 1092374 (British Court of Appeal).

[22] *Hatleberg v. Norwest Bank of Wis.*, 2005 WI 109, ¶¶ 6–12, 283 Wis. 2d 234, 700 N.W.2d 15.

¶ 68. This court held that the bank could be held liable for providing the incorrect information. The court concluded that the bank held itself out as an expert in financial planning and was liable for negligent performance of professional services when it provided false information.[23]

¶ 69. The court of appeals in the instant case points out that *Hatleberg* might be read to imply that a claim for negligence is indistinguishable from a claim for breach of fiduciary duty.[24]

¶ 70. However, the court of appeals also suggests a more appropriate reading of *Hatleberg*. In *Hatleberg*, this court addressed the negligence theories presented by the plaintiff and did not intend to opine on the relationship between a claim for the breach of a fiduciary duty and a claim for negligent performance of professional services, a relationship that was not an issue in the case before the court.[25] See the court of appeals decision, discussing the distinction between a fiduciary duty claim and a negligence claim.[26]

¶ 71. As I read *Hatleberg*, this court noted three distinct duties under which the bank might be liable to the settlor's estate, clearly distinguishing between breach of fiduciary duties and the breach of the duty of ordinary care.[27] *Hatleberg*, then, can be explained by recognizing that the bank, in dealing with the settlor

---

[23] *Id.*, ¶¶ 34–39, 42. The court also concluded that the bank committed negligent misrepresentation. *Id.*, ¶¶ 40–41.

[24] *Zastrow*, 286 Wis. 2d 416, ¶ 22.

[25] *Id.*, ¶ 23.

[26] *Id.*, ¶¶ 23–24, 26.

[27] *See Hatleberg*, 283 Wis. 2d 234, ¶ 18 ("We have organized our analysis into three categories: (1) Duties arising in [the defendant's] undisputed capacity as trustee; (2) Duties arising

after the trust was established, owed her no fiduciary duty as a trustee of the trust.[28] Although the bank was held to a professional standard of care, it was held to that standard because it held itself out to the settlor as an expert financial advisor, not because of a fiduciary relationship as trustee with the settlor.[29]

¶ 72. Thus, at least with respect to the law of trusts, it appears to me that the case law in this state has not confused a fiduciary duty of the trustee and the non-fiduciary duty of ordinary care. Indeed, in *Hatleberg,* when the duty of care was not the trustee's fiduciary duty of care, the court recognized this distinction and analyzed the claim as a negligence claim.

¶ 73. The principles of fiduciary duty apply with different force in different contexts involving different persons and relationships. None of the sources I have found, and none of the sources cited by the majority opinion, addresses the duties of a trustee. As Professor Deborah A. DeMott explains, *the law of fiduciary duty*

---

in [the defendant's] disputed capacity as financial planner or advisor; and (3) Duty to avoid negligently providing inaccurate information.").

[28] Restatement (Second) of Trusts § 174 (1959) (trustee's duty of care owed to beneficiary).

[29] *Hatleberg,* 283 Wis. 2d 234, ¶¶ 38–39; *see Zastrow,* 286 Wis. 2d 416, ¶¶ 24–26.

In *Hatleberg,* 283 Wis. 2d 234, ¶ 32, the court noted that fiduciary duties may arise from the relationship between a financial advisor and a client. However, the court concluded that it need not address the existence of such duties because it found that the bank had violated the ordinary duty of care and could be held liable for negligence. The conclusion that the court did not need to address the fiduciary duty claim may be part of the cause for confusion surrounding the *Hatleberg* case.

is "situation-specific."[30] Litigants and courts should therefore take care in identifying the fiduciary and the fiduciary duty at issue in each case because different fiduciaries may have different duties, including the duty of care.

¶ 74. In sum, I conclude that, as dictated by our precedent in *Beloit Liquidating,* the two-year statute of limitations for intentional torts, Wis. Stat. § 893.57, applies to claims for breach of fiduciary duty. That analysis is sufficient to decide the instant case. I would go no further.

¶ 75. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion and Justice N. PATRICK CROOKS joins Part I of this opinion.

---

[30] *See* Deborah A. DeMott, *Beyond Metaphor: An Analysis of Fiduciary Obligation,* 1988 Duke L.J. 879, 879 (1988).